IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RUTH H. SUYAT,<br><br>         Plaintiff,<br><br>    vs.<br><br>JOHN E. POTTER,<br>Postmaster General,<br><br>         Defendant.<br>_____ | CIV. NO. 06-00476 SOM-KSC<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY JUDGMENT |

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I.      INTRODUCTION.

This is a case about a United States Postal Service ("USPS") sales clerk, Plaintiff Ruth H. Suyat, who claims to have been wrongfully terminated. Suyat also says that the USPS did not properly pay her for the work that she did.

Suyat is proceeding pro se. This court previously granted a motion for partial summary judgment in favor of Defendant John E. Potter, the Postmaster General, on the Title VII claims asserted by Suyat in her Complaint. The Government now moves for dismissal or for summary judgment on all of the remaining claims. The court here grants summary judgment in favor of Potter on the remaining claims.

II.     BACKGROUND.

Suyat was formerly employed as the Postmaster Relief for a post office in Kualapuu, Molokai, Hawaii. See Declaration of Cummins Mahoe, III (Oct. 3, 2007) ¶ 6. This meant that Suyat

filled in for the postmaster at the Kualapuu post office, a management-level position.  Id. ¶¶ 7, 12.  This was a temporary position.  Id. ¶ 9.

Since January 2005, the Postmaster of the Kaunakakai post office has been Cummins Mahoe III.  Id. ¶ 1.  In January 2005, there were five sales clerks positions assigned to the Kaunakakai post office, but two of those positions were vacant.  Id. ¶ 10.  Although Suyat was the Postmaster Relief at the Kualapuu post office, she occasionally worked as a sales clerk at the Kaunakakai post office, filling in for a vacant position.  Id.  Mahoe sought to fill the two sales clerk positions and had three applicants for the two positions, all of whom met the minimum required score on the USPS entrance examination.  Id. ¶¶ 14, 15.  The applicant with the highest score on that test was Alexander Kalanihuia.  Suyat was the applicant with the lowest score.  Id. ¶ 17.  As a disabled veteran, Kalanihuia had a preference that required him to be hired over other candidates ranked lower on a hiring worksheet.  Id. ¶ 18-19; Ex. F (Employee, Labor Relations Manual § 344.5).

After reviewing the applications and interviewing the three candidates, Mahoe selected Kalanihuia and Suyat to fill the two sales clerks positions.  Mahoe Decl. ¶ 21.  Shortly thereafter, Mahoe swore in Suyat as a sales clerk and submitted her paperwork to the human resources department for final

approval.  Id. ¶ 22; see also Affidavit of Christina L. Sarmiento (Oct. 11, 2007) (indicating that Suyat was hired as a sales clerk); Affidavit of Madelyn S.P. Sagario (Oct. 10, 2007) (unsworn, but indicating same); Affidavit of Roxann H. Tancayo (Oct. 16, 2007) (unsworn, but indicating same).  Apparently, Kalanihuia was still working at his former job and was unable to be sworn in at that time.  See Opposition at 5.

Mahoe was later informed that he would only be allowed to fill one sales clerk position, rather than two.  Mahoe Decl. ¶ 23.  Because he was required to give a hiring preference to a disabled veteran and because Kalanihuia scored higher on the entrance examination, Mahoe chose to hire Kalanihuia for the one sales clerk position.  Id. ¶ 24.  The Government contends that, notwithstanding the swearing of Suyat and the paperwork prepared for her hiring, her appointment as a sales clerk was not complete.  See generally Ex. F.

III.    SUMMARY JUDGMENT STANDARD.

Effective December 1, 2007, Rule 56(c) of the Federal Rules of Civil Procedure has been amended.  Summary judgment shall be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c) (effective Dec. 1, 2007).  "The language of Rule 56 has

been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only." Rule 56 Advisory Committee Notes, 2007 Amendments. Because no substantive change in Rule 56(c) was intended, the court interprets the new rule by applying precedent related to the prior version of Rule 56(c).

One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Accordingly, "[o]nly admissible evidence may be considered in deciding a motion for summary judgment." Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006). Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See Celotex, 477 U.S. at 323. A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls on the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp.,

477 U.S. at 323); accord Miller, 454 F.3d at 987.  "A fact is material if it could affect the outcome of the suit under the governing substantive law."  Miller, 454 F.3d at 987.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted).  The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial."  Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  California v. Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000) ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor."  Miller, 454 F.3d at 988 (quotations and brackets omitted).

IV.     ANALYSIS.

There is no dispute that Suyat thought she was hired for the sales clerk position when she filled out paperwork and was sworn in by Mahoe.  Nor is there any dispute that, at the time Suyat was sworn in and filled out the paperwork, Kalanihuia was unavailable to start working as a sales clerk.  Suyat believes that, when she filled out the paperwork and was sworn in, she was actually hired as a sales clerk.  Because Suyat actually worked as a sales clerk for a number of months, she believes that she was "unhired" to make room for Kalanihuia when he was available to start months later.

Suyat's pro se Complaint asserts that, when she was "unhired," the USPS wrongfully terminated her and/or breached an employment contract that she had with it.  The Government argues that, although Suyat had been sworn in and filled out paperwork, she had never actually been "appointed" to the sales clerk position because the human resources department had not approved her appointment during the time that she had been working as a sales clerk.

Suyat's Complaint also asserts that, for the time she was working as a sales clerk, she was underpaid.

        A.    Suyat's Breach of Contract/Wrongful Termination Claims are Dismissed.

Suyat claims that she was wrongfully "unhired." She says that she had an employment contract with the USPS because she was sworn in as a sales clerk, filled out paperwork for that position, and worked as a sales clerk for months. Suyat says that, because she was already working as a sales clerk, she had to first be removed from that position before Mahoe could hire Kalanihuia, the disabled veteran. Suyat asserts that her "unhiring" breached her employment contract. The problem with this argument is that USPS employees do not have "contracts," but rather serve by appointment.

Employment with the USPS is generally covered by the Postal Reorganization Act, 39 U.S.C. §§ 1001-11. Under 39 U.S.C. § 1001, "[e]xcept as otherwise provided in this title, the Postal Service shall appoint all officers and employees of the Postal Service." Id. (emphasis added). Courts have therefore held that "Postal Service employees do not serve pursuant to employment contracts." Reeder v. Frank, 813 F. Supp. 773, 778 (D. Ut. 1992), aff'd 986 F.2d 1428 (10th Cir. 1993). This distinction between being "appointed" and having an employment "contract" is important, as there can be no viable breach of contract claim arising out of an "appointment" to a USPS position:

> It is well settled that employees of the federal government derive the benefits and obligations of their official positions from

>   the fact of appointment rather than from any
>   contractual relationship. The United States
>   Postal Service is "an independent
>   establishment within the executive branch of
>   the government of the United States" (39 U.
>   S. C. § 201), whose officers and employees
>   serve through "appointments" (39 U. S. C.
>   § 1001(a)). Accordingly, as postal employees
>   receive their employment rights through
>   appointments to positions, and not as a
>   result of personal contracts of employment,
>   plaintiff's claim that his failure to be
>   reinstated to a position in the Postal
>   Service breached an "implied contract of
>   employment" is without merit.

Boyd v. U.S. Postal Serv., 1983 WL 636, *4 (W.D. Wash. Aug. 1, 1983) (citation omitted), aff'd on other grounds 752 F.2d 410 (9th Cir. 1985).

As the Ninth Circuit has further stated:

>   [F]ederal employees serve by appointment, not
>   by contract. Though a distinction between
>   appointment and contract may sound dissonant
>   in a regime accustomed to the principle that
>   the employment relationship has its ultimate
>   basis in contract, the distinction
>   nevertheless prevails in government service.
>   The terms of the appointment displace
>   previous understandings, understandings that
>   in other contexts might have created a
>   contractual right. In so holding, it appears
>   the courts follow the rationale that the
>   government should not be bound by
>   representations at variance with promulgated
>   statutes and regulations fixing the pay of
>   its employees, a rule sometimes expressed
>   simply as a part of the doctrine of sovereign
>   immunity.

Riplinger v. United States, 695 F.2d 1163, 1164 (9th Cir. 1983).

Suyat's breach of contract/wrongful termination claims essentially assert that Mahoe hired her when he swore her in and

she worked as a sales clerk for months.  Even assuming that Mahoe told Suyat that she had been hired, Mahoe could not change the statutory requirement that she be "appointed."  See Id.; 39 U.S.C. § 1001(a).  Nothing in the record indicates that Suyat was "appointed" to the one sales clerk position ultimately available.

Even assuming that Suyat was appointed, her wrongful termination claim fails.  Except as otherwise noted in the Postal Reorganization Act, "the provisions of chapter 75 of title 5 [, 5 U.S.C. §§ 7501-7543, pertaining to civil service,] shall apply to officers and employees of the Postal Service."  39 U.S.C. § 1005(a)(1).  At the hearing on the present motion, Suyat admitted that she does not meet the definition of "employee," which is defined as:

> (A) an individual in the competitive service--
>
> > (i) who is not serving a probationary or trial period under an initial appointment; or
>
> > (ii) who has completed 1 year of current continuous service under other than a temporary appointment limited to 1 year or less;
>
> (B) a preference eligible in the excepted service who has completed 1 year of current continuous service in the same or similar positions--
>
> > (i) in an Executive agency; or
>
> > (ii) in the United States Postal Service or Postal Regulatory Commission; and

9

>     (C) an individual in the excepted service
>     (other than a preference eligible)--
>
>> (i) who is not serving a probationary or
>> trial period under an initial appointment
>> pending conversion to the competitive
>> service; or
>
>> (ii) who has completed 2 years of current
>> continuous service in the same or similar
>> positions in an Executive agency under other
>> than a temporary appointment limited to 2
>> years or less.

5 U.S.C. § 7511(a)(1).  Suyat says that she was "in the excepted service," but that she had not completed 1 or more years "of current continuous service in the same of similar position[]."  She therefore does not meet the definition of an "employee" such that she may bring an action under the civil service laws.

Even if Suyat could meet the definition of "employee" in § 7511(a)(1), her claims would fail because she did not file her claims with the Merit Systems Protection Board ("MPSB").  That failure to exhaust her administrative remedies waives any right she may have had to judicial review.  See Ayrault v. Pena, 60 F.3d 346, 349 (7th Cir. 1995).  Even if she were entitled to judicial review, the appropriate forum would be the United States Court of Appeals for the Federal Circuit, not this court.  5 U.S.C. § 7703(b)(1); Ayrault, 60 F.3d at 349.

Summary judgment is granted in favor of the Government on Suyat's breach of contract/wrongful termination claims.

B.  Underpaid Wages.

Suyat also asserts that, when she was working as a sales clerk, she should have been paid at a higher rate. On page 4 of her Complaint, Suyat asserts that, under "Postal Regulations and Union agreement[,] anytime an employee is promoted and/or assigned or/and assume the duties that employee is to be compensated (paid) at the higher level pay of the assumed position." Suyat filed no opposition to the Government's motion seeking judgment on her underpaid wages claim.

At the hearing on the present motion, the court asked Suyat to identify the legal basis on which her underpaid wages claim is based. Suyat indicated that she could not identify a postal regulation requiring higher wages, but argued that an unspecified union agreement required the higher wages. Although Suyat was not a member of the union, the lack of union membership, by itself, does not bar Suyat's underpaid wages claim based on a union agreement. See Miles v. U.S. Postal Serv., 561 F.2d 1348, 1350 (9th Cir. 1977) (per curiam) (holding that 39 U.S.C. § 1208(b), a statute authorizing suits for violation of contracts between the USPS and labor organizations, also creates a private right of action for a nonunion employee to sue for a breach of the union contract with the USPS). Nevertheless, Suyat's underpaid wages claim fails.

Nothing in the record establishes that Suyat was indeed appointed as a sales clerk such that she can sue under the union contract. Even assuming that Suyat was appointed as a sales clerk, her underpaid wages claim fails because, as set forth above, she was not an "employee" for purposes of the civil service laws and because this is not the proper forum for such a claim.

Moreover, even if Suyat is basing her underpaid wages claim on the right to sue for a breach of a union contract as articulated in Miles, 561 F.2d 1348, her underpaid wages claim fails. Miles reasoned that a nonunion employee must be afforded the same rights as a union employee. Otherwise, the nonunion employee would suffer indirect coercion to join the union to maintain an action for a breach of the union contract, a violation of 39 U.S.C. § 1209(c), which protects an employee's right to form, join, and assist a labor organization. Id. at 1350. The Ninth Circuit therefore held that a nonunion employee must have rights equivalent to a union employee to sue for an alleged breach of a union agreement. Id.

In Miles, the Ninth Circuit remanded the breach of contract claim for a determination of whether the employee "must first resort to the union-postal service grievance procedures and exhaust his administrative remedies before he may maintain this action." Id. at 1350. In the present case, a copy of the union

agreement allegedly breached is not part of the record. Nevertheless, there is no dispute that union agreements require some grievance and/or exhaustion of administrative remedies before a person may file suit in this court.  This court rules that Suyat had to at least put the USPS on notice that she was being underpaid.  Regardless of what other grievance and/or exhaustion requirements may apply to nonunion members (a matter this court does not decide), notice is a bare minimum.  Otherwise Suyat would be free to sue without any prefiling requirement and, far from being on the same footing as a union member, would be better off in terms of access to a court.  Because there is no evidence that Suyat gave any notice to the Government of her wage claim, her wage claim fails.

V.      CONCLUSION.

For the foregoing reasons, the court grants the Government's motion for summary judgment.  Because it does not appear that Suyat could possibly amend her Complaint to state a viable contract claim, the court declines to grant her leave to amend the Complaint with respect to that claim.  Suyat is given

leave to file an amended underpaid wages claim, if she can, no later than January 11, 2008.

    IT IS SO ORDERED.

    DATED: Honolulu, Hawaii, December 12, 2007.



    /s/ Susan Oki Mollway
    Susan Oki Mollway
    United States District Judge

Suyat v. Potter, Civ. No. 06-00476 SOM/KSC; ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT